UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 15-cr-10389-IT-4 |
| | * | |
| EVAN LOPES, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

May 3, 2017

TALWANI, D.J.

I.  Introduction

A federal grand jury indicted Evan Lopes for possession of methylone with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Lopes seeks to suppress items seized during searches of his residence and his motor vehicle on January 15, 2015. For the reasons set forth below, Lopes' Motion to Suppress [#71], Motion to Suppress Warrantless Search [#73], and Motion to Suppress [#75][1] are DENIED.

II. The Facts Set Forth in the Affidavit in Support of the Search Warrant

The following facts are derived from a January 14, 2015, affidavit submitted by Detective Lieutenant Sean E. Balcom ("Detective Lieutenant Balcom") in support of the search warrant at issue in Lopes' motions. See Gov't Resp. Def.'s Mot. Suppress ("Gov't Resp.") Ex. A, Aff. Supp. Search Warrant 3-4 ("Balcom Aff.") [#80-1].

---

[1] Motion to Suppress [#71] and Motion to Suppress [#75], and their accompanying memoranda of law in support, see Mem. Supp. Mot. Suppress [#72], Mem. Supp. Mot. Suppress [#76], are identical.

### A. *Investigation from December 2011 to September 2014*

Beginning in approximately December 2011, the Barnstable Police Department undertook an investigation, along with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Massachusetts State Police Cape Cod Task Force, and other local law enforcement, into drug trafficking activities by David Landry and others.

On March 7, 2012, state and local law enforcement officers executed a search warrant at the home where Landry was residing at that time, discovering more than thirty-five pounds of marijuana, digital scales, and cash in the house and a vehicle parked at the house. Between April and November 2012, an undercover ATF agent conducted more than ten controlled purchases of marijuana, cocaine, and heroin from Landry's associate Michael Fields. Following Fields' arrest on federal drug charges approximately one year later, Fields spoke with ATF and local law enforcement on October 20, 2013, stating that Landry supplied the heroin and marijuana Fields sold.

After learning from a confidential informant in February 2014 that an individual named Mason Lavallee was distributing large quantities of heroin, local law enforcement organized a series of controlled heroin purchases from Lavallee. On April 24, 2014, local law enforcement arrested Lavallee, who began cooperating with the investigation. As part of that cooperation, Lavallee informed police that Landry supplied him with heroin, and identified Fields, Tiquwan Dickerson, Brian Costa, and William Branch as Landry's co-conspirators. In July and August 2014, Lavallee conducted several controlled purchases of heroin from Landry or Landry's associates.

Several times during the summer of 2014, Lopes was observed meeting Landry at Landry's residence, driving a vehicle with the license plate 211NV7. Additionally, on September

4, 2014, Landry was observed travelling to an address adjacent to Lopes' residence, 14 Point Pleasant Circle, East Wareham, Massachusetts ("14 Point Pleasant Circle").

During the month of September 2014, law enforcement conducted intermittent surveillance of 304 Village Drive, Bourne, Massachusetts ("304 Village Drive"), where on August 29, 2014, local law enforcement observed Landry exiting the home and leaving the area in his rental vehicle that had been parked outside. They identified Derek Locurto as the resident of 304 Village Drive. Electronic surveillance also indicated that Landry's rental vehicle was parked near 304 Village Drive on several occasions prior to September 12, 2014.

On September 12, 2014, Landry was arrested for trafficking heroin pursuant to the above investigation, and was placed in custody at the Barnstable prison.

### B. *Landry's Letters from Barnstable Prison*

Beginning on October 6, 2014, Barnstable Superior Court Grand Jury subpoenas were issued to obtain Landry's jail calls and mail. Between October 2014 and January 2015, Landry carried on written correspondence with Diane Johnson, Justin Groom (aka "Bone" or "JBone"), Dickerson (aka "Raheem," "Stacks," or "Stacks Bundles"), Lopes (aka "E"), and Locurto (aka "Dimitri" or "Fatboy") about his drug trafficking organization. Law enforcement inspected at least four letters addressed to or from Lopes between October 2014 and December 2014.

On October 14, 2014, law enforcement inspected an envelope addressed to Johnson, which contained a letter dated October 10, 2014 and addressed to Lopes using his nickname, "E." Landry stated:

> Any way give bone his letter N goby fatboys. He owe me 26 bucks I need 5 RIGHT NOW . . . . Also them 2 things up street just get after leaves fall. Raheem will know what to do w/ them don't even worry bout it just grab N move closer to spot. Before everything freeze. N he'll be home in couple months. . . . Move those things to your spot soon, where they was before til Rasheem out.

3

On November 15, 2014, law enforcement inspected an envelope addressed to Johnson, which contained a letter addressed to both Lopes and Locurto. In the portion of the letter addressed to "Derek," Landry states "I know you wont have all right away but im pretty sure you said you'd have 5 Right before I got bagged. Were at 26 right now. if you give E 5 now we'll be at 21." Other evidence confirms that Lopes and Locurto were in communication at this time, including telephone records showing 51 contacts, between November 16, 2014 and December 8, 2014, between Locurto and a number subscribed by Lopes' girlfriend but used by Lopes.

On December 18, 2014, law enforcement inspected an incoming envelope from Lopes, bearing a return address of 14 Point Pleasant Circle. Lopes stated "I Know how much you done for me so anything I can do to help I will try n do . . . . I haven't grabbed the new letter from ur moms yet but I just talked to you yesterday . . . ." And on December 20, 2014, law enforcement inspected an envelope addressed to Lopes ("E") at 14 Point Pleasant Circle, containing a letter dated December 19, 2014. Landry stated "Damn I been callin you for weeks . . . soo whats up? You change your # or something, fatboy only gave you 2500 so far? Did you grab that from up the Street? . . . Gotta know wassup w/ down the street, fatboy, and JBONE if they growin or not."

Additionally, on December 30, 2014, law enforcement inspected a letter from Landry addressed to Johnson, containing a letter to Dickerson that referenced Lopes. Landry stated in part:

> "I got 2 whole ones of Miley cyrus over E's, I don't even want you movin w/ them but just make sure they safe I only want 20 each so 40 for both plus you can throw like 4-5 on each of vit c . . . plus E owe me at least 20-25 from all moll he lost plus coming short. . . . fatboy owe me $22,500 get his # from bone or E..he live at same spot in them Apts . . . ."

4

### C. January 2015 Investigation

On January 2, 2015, Lopes was observed walking up to and entering 304 Village Drive while his girlfriend waited outside in her car. Lopes later exited 304 Village Drive, got into his girlfriend's vehicle, and drove with her to a Tedeschi Food Shop. Lopes was stopped by local law enforcement at the Tedeschi Food Shop, and spoke with detectives about his activities that day. During the course of the conversation, Lopes' girlfriend identified their residence as 14 Point Pleasant Circle. Additionally, it was determined that Lopes possessed a small quantity of marijuana and approximately $600.00. Lopes admitted that he purchased the marijuana from a friend, but would not identify that person. Law enforcement took custody of the marijuana and Lopes and his girlfriend were allowed to leave.

Several days later, on January 6, 2015, the Barnstable Police Department executed a search warrant at the residence of Groom, one of Landry's associates. The search warrant revealed a marijuana growing operation, including dozens of marijuana plants, packaging materials, related paperwork and contraband, and cash. The paperwork revealed that Locurto was a drug customer of Groom and Landry. Groom was arrested based upon the evidence recovered.

### III. The Search Warrant for Evan Lopes and 14 Point Pleasant Circle

The Barnstable Police Department obtained a search warrant on January 14, 2015, for 14 Point Pleasant Circle and for Evan Lopes. Gov't Resp. Ex. A, Search Warrant 2 [#80-1]. The search warrant authorized a search for (1) "Molly/MDMA," (2) "all materials, products and equipment of any kind used or intended for use in the manufacturing, processing and distributing of Molly/MDMA," (3) articles of personal property related to that operation, (4) financial proceeds and articles of personal property derived from that operation, (5) equipment used to detect police activities, (6) weapons, firearms, or ammunition, (7) documents and articles of

5

personal property relating to the residents of 14 Point Pleasant Circle, (8) other records of income or expenditures related to that operation, and (9) photographs of individuals making, possession, or distributing controlled substances. Id. at 3.

IV.  Execution of the Search Warrant

The search warrant was executed on January 15, 2015. Gov't Resp. Ex. B, Incident Report ("Incident Rept.") 5 [#80-2]. Barnstable Police Department Detectives Ginnetty and Butler established surveillance at 14 Point Pleasant Circle to determine whether Lopes was at home. Id. Lopes was observed exiting the house and driving away in an unregistered vehicle bearing license plate 211NV7. Id. Shortly thereafter, at Detective Ginnetty's request, Wareham Police Department Officer Lally stopped Lopes. Id. When Detective Ginnetty arrived, Officer Lally instructed Lopes to exit the vehicle, arrested and handcuffed him, and walked him back to Detective Ginnetty. Id. at 7.

Detective Ginnetty explained and presented to Lopes the search warrant for Lopes and his residence, and advised Lopes of his *Miranda* rights, which Lopes indicated he understood. Id. The search of Lopes returned negative results. Id. A search of Lopes' vehicle resulted in the seizure of a handwritten letter from Landry to Lopes, dated October 10, 2014. Id. at 5, 7. Detective Ginnetty and Lopes spoke briefly about the letter and Lopes' activity, and Lopes denied having any drugs at his home. Id. at 7. Lopes stated "you guys think I'm a bad guy because of who my friends are. Just cuz my friends do what they do, doesn't mean that I do." Id. When Detective Ginnetty asked about the letter, Lopes stated "Man, that's my friend that wrote to me. You guys aren't gonna find shit." Id. Lopes was then placed in Officer Lally's cruiser and transported back to his residence. Id.

When Lopes was returned to his residence, Detective Lieutenant Balcom and Detective DeSilva presented Lopes with the search warrant. Id. at 5. Lopes accompanied police into his home to secure his dog, and then sat on his couch reading the search warrant while police conducted the search. Id. Evidence seized included 2 kilograms of suspected narcotics, located in a woodpile in front of the residence. Id. at 6. As a result of the search, Lopes was placed under arrest. Id.

V.     Analysis

    *A. Motion to Suppress [#71, #75]*

Lopes seeks, in his first and third motions, to suppress the evidence seized during a search of his residence, 14 Point Pleasant Circle, on the grounds that the affidavit submitted in support did not establish probable cause. To properly support the issuance of a search warrant, "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). To determine whether a nexus exists, the court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "The nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation . . . ." Id. at 88. Rather, in certain circumstances, the nexus between the objects to be seized and the location to be searched "can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a

criminal would hide [evidence of a crime] . . . ." Id. (quoting United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979)).

To establish probable cause, "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." Id. at 86 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). "[P]robable cause does not demand certainty, or proof beyond a reasonable doubt, or even proof by a preponderance of the evidence—it demands only 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Rivera, 825 F.3d 59, 63 (1st Cir. 2016) (quoting Gates, 462 U.S. at 238). "[P]robable cause to suspect that someone has committed a crime does not automatically give rise to probable cause to search that person's home." United States v. Thompson, 630 F. Supp. 2d 138, 143 (D. Mass. 2009) (citing Feliz, 182 F.3d at 88). Courts considering whether probable cause exists "look to the totality of the circumstances—a phrase that means that all material circumstances should be considered." Rivera, 825 F.3d at 63-64 (quotations and internal quotation marks omitted).

The search warrant application provided multiple touchpoints connecting 14 Point Pleasant Circle to Landry's drug trafficking organization. First, the affidavit established that Lopes lived at 14 Point Pleasant Circle. Lopes received or sent multiple letters at or from 14 Point Pleasant Circle, Balcom Aff. 14-15 [#80-1], and Lopes' girlfriend identified 14 Point Pleasant Circle as their home, id. at 16. Second, it detailed Landry's drug trafficking activities, and placed Lopes with or near Landry, on at least several occasions. Id. at 10-11. Third, it described Landry's communications with and about Lopes, while directing his drug trafficking organization from the Barnstable Prison. Id. at 14-16, 18. For example, in a letter dated October 10, 2014, Landry instructed Lopes to give another letter to Groom, visit Locurto regarding a

$26,000 drug debt, and to retrieve "2 things"[2] to move them closer to Lopes' residence. Id. at 14. On November 15, 2014, Landry told Locurto to give $5,000 to Lopes. Id. at 15. On December 18, 2014, Lopes told Landry that "I know how much you done for me so anything I can do to help I will try n do . . . ." Id. And in a letter dated December 19, 2014, Landry told Lopes "fatboy only gave you 2500 so far? Did you grab that from up the Street? . . . Gotta know wassup w/down the street, fatboy, and JBONE if they growin or not." Id. Additionally, on December 30, 2014, Landry told another associate, Dickerson:

> "I got 2 whole ones of Miley cyrus over E's, I don't even want you movin w/ them but just make sure they safe I only want 20 each so 40 for both plus you can throw like 4-5 on each of vit c . . . plus E owe me at least 20-25 from all moll he lost plus coming short. . . . fatboy owe me $22,500 get his # from bone or E..he live at same spot in them Apts . . . ."

Id. at 18-19. Finally, the search warrant application explained that Lopes was in contact with, and likely purchased marijuana from, Locurto, one of Landry's known associates. Id. at 16-17. Telephone records show 51 contacts, between November 16, 2014 and December 8, 2014, between Locurto and a number subscribed to Lopes' girlfriend but used by Lopes. Id. at 16. Taking a common sense view of these facts, as well as the other facts in the affidavit describing Landry's and his associates' other drug trafficking activities, the court was provided with a "substantial basis" upon which to conclude that there was a "fair probability" that 14 Point Pleasant Circle housed the items sought in the search warrant application.

Moreover, the search warrant application was supported by timely information. See United States v. Schaefer, 87 F.3d 562, 568 (1st Cir. 1996) ("[A]n affidavit supporting a search warrant must contain timely information or else it will fail . . . .") (internal quotation marks

---

[2] Detective Lieutenant Balcom stated that, based on his training and experience, and when read in context with the other letters sent by Landry from the Barnstable prison, the "2 things" referred to "2 kilograms of the drug 'Molly' (MDMA/Ecstasy)." Balcom Aff. 14 [#80-1].

omitted). The application was submitted within two weeks of law enforcement's observation of the interaction between Lopes and one of Landry's associates (January 2, 2015), Balcom Aff. 16-17 [#80-1], and ten days after police searched the residence of Groom, another Landry associate (January 6, 2015), which indicated that Landry's drug trafficking organization was ongoing, id. at 17. Moreover, on December 30, 2014, Landry's associate Dickerson was instructed not to move the "2 things" Lopes was alleged to have at 14 Point Pleasant Circle. Id. at 18. These facts suggest that the items sought in the search warrant application were likely still at 14 Point Pleasant Circle. See United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008) (to assess timeliness of information, courts look to "the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information"); Schaefer, 87 F.3d at 568 ("[I]t is common ground that drug conspiracies tend to be ongoing operations, rendering timely information that might, in other contexts, be regarded as stale."). Because the search warrant application provided ample, timely facts suggesting a "fair probability" that 14 Point Pleasant Circle housed the items sought, the search warrant was supported by probable cause. Accordingly, Lopes' Motion to Suppress [#71] and Motion to Suppress [#75] are DENIED.

B. *Motion to Suppress Warrantless Search [#73]*

In his second motion, Lopes seeks to suppress the October 10, 2014, letter recovered from the center console of his vehicle during a search following his arrest on January 15, 2015. Lopes asserts that the search, because it was warrantless, was presumptively unreasonable, that no exigent circumstances justified the search, that officers otherwise had no other probable cause to search the vehicle, and the item seized was not in plain view. He also argues that the "search

incident to arrest" exception does not apply, because the underlying rationales for that exception were not present at the time of his arrest.

1. Exigent Circumstances

Lopes contends that the exigent circumstances exception does not apply. The "exigent circumstances" doctrine encompasses several scenarios: (1) risk of public or officer safety; (2) risk of evidence destruction; (3) risk of escape . . . (4) "hot pursuit" of a fleeing felon," United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995), and (5) emergency aid, United States v. Infante, 701 F.3d 386, 392 (1st Cir. 2012). "The 'exigent circumstances' inquiry is limited to the objective facts reasonably known to, or discoverable by, the officers at the time of the search." Tibolt, 72 F.3d at 969 (citing Illinois v. Rodriguez, 497 U.S. 177, 186 (1990)).

Officers had no reason to suspect that Lopes posed a threat or to fear for their safety. They had no prior evidence that Lopes was dangerous, they did not find any weapons or ammunition on his person, and he was compliant with all officer directions. Moreover, Lopes was handcuffed and led away from the vehicle, so there was little risk of evidence destruction or escape, nor were the officers in "hot pursuit." Finally, no facts indicate any medical emergency. Accordingly, no exigent circumstances justified the warrantless search of Lopes' motor vehicle.

2. Plain View

Next, Lopes argues that the letter, located within the motor vehicle's center console, was impossible to observe in plain view. Under the "plain view" exception to the warrant requirement, a "seizure is lawful if (1) the seizing officer has a prior justification for being in a position to see the item in plain view and (2) the evidentiary value of the item is immediately apparent." United States v. Owens, 167 F.3d 739, 746 (1st Cir. 1999) (citing Horton v. California, 496 U.S. 128, 136 (1990)). There is no evidence that Officer Lally saw the letter,

tucked away in the center console, when he asked Lopes to exit the vehicle. Therefore, the plain view exception does not excuse the warrantless search of Lopes' motor vehicle.

3. Search Incident to Arrest

Lopes also argues that the search-incident-to-arrest exception does not apply. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception is a search incident to a lawful arrest. Id. Driving this exception are two underlying purposes: "officer safety and evidence preservation," two concerns "typically implicated in arrest situations." Id. Thus, the scope of the search must be cabined to (1) "the arrestee's person," and (2) "the area within [the arrestee's] immediate control"—meaning, "the area from within which he might gain possession of a weapon or destructible evidence." Id. at 339 (quoting Chimel v. California, 395 U.S. 752, 763 (1969)). "[A]n automobile search may fall within the search-incident-to-arrest doctrine only in two very specific situations: when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search . . . or when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." United States v. Polanco, 634 F.3d 39, 42 (1st Cir. 2011) (quoting Gant, 556 U.S. at 343 (holding that the officers' search of the passenger compartment of defendant's car was not a valid search incident to arrest where the suspects were already handcuffed and in separate patrol cars before the officers searched the car)) (internal quotation marks omitted).

The search of Lopes' vehicle does not fit into either situation. First, because Lopes was immediately handcuffed and led away from his car, he was neither "unsecured" nor "within reaching distance of the passenger compartment at the time of the search," and thus there were

no evidence preservation concerns. See Polanco, 634 F.3d at 42. No weapons were found on Lopes' person when he was searched and he complied with all police commands, giving no other suggestion that officers had reason to believe he was dangerous or had reason to fear for their safety. See id. at 42. Second, it is difficult to conceive of evidence relevant to the arrest for driving an unregistered vehicle that an officer could have had a reasonable basis to believe would be found in Lopes' vehicle.[3] Therefore, the search incident to arrest exception cannot justify the search of Lopes' vehicle.

4. Probable Cause & the Automobile Exception

Finally, Lopes argues that law enforcement had no probable cause to search his vehicle, and thus that the automobile exception does not apply. Under the automobile exception, when a vehicle is on a public road, "police officers may seize and search an automobile prior to obtaining a warrant where they have probable cause to believe that the automobile contains contraband." United States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014); see also Florida v. White, 526 U.S. 559, 563-64 (1999) ("[W]hen federal officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband."). As stated above, to establish probable cause, "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." Feliz, 182 F.3d at 86 (quoting Brown,

---

[3] In its response, the government states that Lopes could have been arrested either for driving an unregistered motor vehicle or for possession of an illegal drug. See Gov't Resp. 17 [#80]. Although the incident report does not specifically state the reason Lopes was initially taken into custody when removed from his vehicle, it does specify that Lopes was arrested for drug trafficking after the search of his residence. Incident Report 6 [#80-2]. Moreover, the search of Lopes' person did not independently give law enforcement probable cause to arrest him for possession, because no illegal substances were found on his person. Id. at 7. Thus, at the time Lopes was taken into custody upon removal from his vehicle, the only crime for which Officer Lally could have arrested Lopes was driving an unregistered motor vehicle.

13

460 U.S. at 742). An officer may stop a vehicle if he or she observes a traffic violation, even if that stop is a pretext for investigating another crime. Whren v. United States, 517 U.S. 806, 810, 812-13 (1996). After completing a lawful stop, officers may search "any area of the vehicle in which the evidence [might] be found." Polanco, 634 F.3d at 42 (quoting Gant, 556 U.S. at 347).

As detailed above, the officers who stopped Lopes knew about the facts supporting the search warrant that implicated Lopes in drug trafficking activities. In addition to details regarding Lopes' ties to Landry's organization, as well as letters suggesting that Lopes possessed 2 kilograms of drugs at his residence, the affidavit supporting the search warrant stated that the very vehicle Lopes was driving had been observed at Landry's residence on several occasions. When viewed in context, the officers who stopped Lopes knew that (1) the vehicle they stopped had recently left a house where there was probable cause to believe drugs or contraband from drug trafficking was located, and (2) the vehicle was driven by an individual who they had probable cause to believe possessed drugs or contraband from drug trafficking. This knowledge would "warrant a man of reasonable caution in the belief" that the vehicle itself also contained such items. Therefore, even though Lopes was stopped for driving an unregistered motor vehicle, that does not "undermine the basic finding that, at the time that these events transpired, officers had adequate probable cause to stop" Lopes' vehicle "and to search it for evidence of drug dealing activity." United States v. White, 804 F.3d 132, 138 (1st Cir. 2015) (finding that even a "pretextual traffic stop" did not undermine probable cause, and stating "[u]nder these circumstances, the automobile exception and the Fourth Amendment require nothing more"). Accordingly, the search was justified and the Motion to Suppress Warrantless Search [#73] is DENIED.

VI. <u>Conclusion</u>

For the foregoing reasons, Lopes' <u>Motion to Suppress</u> [#71], <u>Motion to Suppress Warrantless Search</u> [#73], and <u>Motion to Suppress</u> [#75] are DENIED.

IT IS SO ORDERED.

Date: May 3, 2017         /s/ Indira Talwani
                          United States District Judge